UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION

LAGRANGE BAYOU VILLAGE, LLC,
An Alabama Limited Liability Company, and
ASSET MANAGEMENT COMPANY, LLC,
an Alabama Limited Liability Company,

      Plaintiffs,

v.                                 CASE NO. 3:07cv194/RV/EMT

JULIAN W. ROEBUCK,
B.R. PROPERTIES, LLC,
a Florida Limited Liability Company,
JOHN DOE and any other
unknown co-conspirators,

      Defendants.

---

## PARTIES' JOINT PRE-TRIAL STIPULATION

      Plaintiffs, LAGRANGE BAYOU VILLAGE, LLC and ASSET MANAGEMENT COMPANY, LLC, and Defendants, JULIAN W. ROEBUCK, and B.R. PROPERTIES, LLC, hereby file their Joint Pre-Trial Stipulation pursuant to the correspondingly lettered paragraphs of this Court's June 9, 2008, Order for Pre-Trial Conference and Setting File, and would state:

      **(A)    Basis for Jurisdiction:**

      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332 based on the amount at issue exceeding $75,000.00 and complete diversity of citizenship; i.e., Plaintiffs are each Alabama Limited Liability Companies and Defendants are each either a resident of Florida or a Florida Limited Liability Company.

**(B)    Concise Statement of the Nature of the Action:**

Plaintiffs have brought a four count Complaint against Defendants for fraud, fraudulent concealment, constructive fraud, and breach of fiduciary duty. All counts arise out of a business transaction between the parties involving the purchase of a 3.5 acre waterfront parcel of property in Freeport, Florida for $3,800,000.00, (the "Marina Parcel"). Plaintiff is not proceeding under Count V of its Complaint and dismisses the same without prejudice.

**(C)    A brief general statement of each party's case:**

**Plaintiffs:**

Plaintiffs allege that Defendants, for themselves and through their promoters, coerced LaGrange Bayou Village, LLC, to acquire the Marina Parcel from Freeport Holdings, LLC, at an inflated price of $3,900,000.00 under an Option Agreement, when in fact, Defendants knew that said parcel could be acquired for a much smaller sum pursuant to a prior "bridge loan" agreement. The alleged transaction was usurious under Florida Law and as such, the interest charged under the parties' arrangement represented unlawful and unenforceable sums. As such, LaGrange had a legal right to redeem the property and compel a transfer of legal title to the Marina Parcel from Freeport Holdings, LLC for no more than $2,197,657.98; $1,702,342.02 less than what it ultimately paid; and potentially compel a transfer for no repayment of what was a criminally usurious debt.

Defendant's motive in compelling LaGrange to purchase the property—at any price, was to justify its capital contributions and equity in LaGrange. These

capital contributions were allegedly made in the form of lost earnest money deposits tendered in connection with the acquisition of the Marina Parcel. Following acquisition by LaGrange, Defendant maintained that its deposits of $285,000.00 on prior contracts represented the partial satisfaction of a requirement in the parties' organizational documents that Defendants substantiate "pre-development" expenses of at least $825,000.00.   Without including the $285,000 in earnest money deposits, Defendants could not justify their capital contributions to LaGrange and risked forfeiture or dilution.

Plaintiffs allege Defendants fraudulently misrepresented and/or concealed the details of, and their involvement in, the original Marina Parcel.  As a result of the alleged fraud and breach of fiduciary duty, LaGrange expended a total of $3,900,000.00 on the Marina Parcel when, by law, it had the right to compel a transfer of the property for, at most, $2,197,657.98.   As such, based on Defendants failure to disclose the details of the previous transaction, Plaintiff has sustained damages of at least $1,702,342.02 for which Defendants are liable.

**Defendants:**

Defendants allege there was no bridge loan.   Freeport Holdings, LLC purchased the Marina property in April 2005 and took title to the property. Lagrange never had a legal right to redeem the property as stated by the plaintiffs.  In fact, the defendants didn't meet James A. Massey (the Plaintiffs) until later in the year, June 2005, well after the Marina had been purchased by Freeport Holdings, LLC.

In a meeting in June, with Massey, defendants proposed a development

opportunity including the acquisition of 76 acres and a permitted marina parcel that could generate increased lot prices if provided as an amenity to the 76 acres. Massey was told there was a contract on the marina parcel in place and that he could purchase it. Massey chose not to at the time because the adjacent land owner was Chris Cadenhead. Massey, following the acquisition of the 76 acres visited the site and noticed the marina. He asked if the marina were still available and if so, he would like to purchase and make part of the subdivision if we could get higher lot prices. His motive for purchasing the marina from Freeport Holdings, LLC was to improve the existing subdivision. He asked Roebuck to negotiate with the owner to purchase the marina. It was closed and purchased and added to the Lagrange Bayou Village, LLC project within one week.

There was no risk of forfeiture or dilution. The defendants joined in the purchase of the marina with the plaintiffs and claimed approximately $325,000 of the $825,000 total predevelopment costs as previously agreed. The defendants did not misrepresent or conceal details of the marina purchase. In fact, James A. Massey met the owner at the closing and had the option to purchase or not.

No damages exist. The marina was purchased was purchased below appraised value and was a good purchase at the time.

### (D)   A list of all exhibits to be offered at the trial

1)   *Final Order dated September 11, 2007, I. Drayton Pruitt, Jr., et al. v. Asset Management Company, LLC, et al., CV 2007-1680, Jefferson County, Alabama.*

2)   *Conceptual Depiction of Marina Village*

3) *Julian Roebuck's Answers to Interrogatories dated August 23, 2007*

4) *Composite Exhibit of eight (8) checks dated between 9/30/04 – 4/4/05*

5) *One Page Facsimile to Mike Sigman/Buddy Fuzzell dated April 4, 2005, Handwritten notes styled "Marina Property"*

6) *Invoice for legal fees of Cadenhead Law Firm to Paul Broadhead dated April 12, 2005*

7) *Composite Exhibit of three (3) checks dated 4/5/05*

8) *Warranty Deed from Diana Calhoun Johnson to Broadhead Development, LLC dated April 5, 2005*

9) *HUD-1 Closing Statement dated 4/5/05*

10) *Assignment from Broadhead Development, LLC to Freeport Holdings, LLC dated April 5, 2005*

11) *Quitclaim Deed from Broadhead Development, LLC to Freeport Holdings, LLC dated April 6, 2005*

12) *Transcript of deposition of G. Michael Sigman, taken November 1, 2007 in this action* [to be read into record]

13) *Draft Option Agreement between Freeport Holdings, LLC and Broadhead Development, LLC*

14) *Draft Agreement between Freeport Holdings, LLC, Mike Sigman and Broadhead Development, LLC*

15) *Draft Agreement between Freeport Holdings, LLC and Broadhead Development, LLC*

16) *Agreement between Freeport Holdings, LLC and Broadhead Development, LLC dated June 29, 2005*

17) *Check dated 6/29/05 from Julian Roebuck i/a/o $100,000 representing earnest money pursuant to Exhibit 16*

18) *Agreement to Release Escrowed Funds dated July 13, 2005*

19) *Articles of Organization of LaGrange Bayou Village, LLC dated July 19, 2005.*

A0360791                          5

20) *Operating Agreement of LaGrange Bayou Village, LLC dated July 19, 2005*

21) *Master Agreement between Asset Management Company, LLC and BR Properties, LLC dated July 19, 2005*

22) *Master Agreement between Asset Management Company, LLC and BR Properties, LLC dated August 2005*

23) *Articles of Capitalization and Management of LaGrange Bayou Village, LLC*

24) *Agreement between Freeport Holdings, LLC and Broadhead Development, LLC dated June 29, 2006*

25) *Warranty Deed from Freeport Holdings, LLC to LaGrange Bayou Village, LLC dated August 12, 2005*

26) *HUD-1 Settlement Statement of Borrower, LaGrange Bayou Village, LLC and Seller, Freeport Holdings, LLC dated August 12, 2005*

27) *Fax from Julian Roebuck to Mike Sigman dated June 22, 2005 attaching Non-Circumvention and Non-Disclosure Agreement*

28) *Agreement to Release Escrowed Funds between Freeport Holdings, LLC and Broadhead Development, LLC dated July 13, 2005*

29) *E-mail from Ted Condrey to Julian Roebuck dated July 19, 2005 regarding legal description of marina property*

30) *Transcript and video of video deposition of Julian Roebuck, taken on May 1, 2006 in the case of Paul Broadhead et al. v. Julian Roebuck et al., 2006 CA 000808, Okaloosa County, FL*

31) *Transcript and video of video deposition of Julian Roebuck, taken on August 17, 2007 in this action*

32) *Complaint filed in Circuit Court of Jefferson County, Alabama styled Asset Management Company v. BR Properties, LLC, Julian Roebuck, Chris Cadenhead and Mitchell Creek, LLC, Civil Case No. CV-2008-90023500*

33) *Motion for Summary Judgment filed in Circuit Court of Jefferson County, Alabama styled Asset Management Company v. BR Properties, LLC, Julian Roebuck, Chris Cadenhead and Mitchell*

Creek, LLC, Civil Case No. CV-2008-90023500

34) *Deposition Transcript of James A. Massey taken in this action*

35) *Deposition Transcript of Stewart "Buddy" Fuzzell taken in this action*

36) *Fax Letter and Agreement from Chris Boswell to Mike Sigman dated May 10, 2005*

**(E)   A list of names and addresses of all witnesses, including rebuttal and expert, intended to be called at the trial by each party.  Expert witnesses labeled as such.**

<u>For Plaintiff:</u>

James M. Massey
Asset Management Company, LLC
153 Cahaba Valley Parkway
Pelham, AL 35124

Julian W. Roebuck
467 Captains Circle
Destin, FL 32541

Mistei Roebuck
467 Captains Circle
Destin, FL 32541

Paul Broadhead, Jr.
1144 Forest Shore Drive
Miramar Beach, FL  32550

Marah Batzell
3814 West Fairfield Drive
Pensacola, FL 32505

Harborview Title/Corporate Representative
Hwy 98
Destin, FL

Corporate Representative
Dowd Land Title Group
285 Hwy. 98
Destin, FL 32541

Ed McDaniel

ed@joeraleybuilders.com
251-747-3561

For Defendant:

Stewart "Buddy" Fuzzell
4619 Springhill Ave.
Mobile, AL

Don Bahouth

Rick Sobi
1364 Driftwood Point Rd.
Santa Rosa beach, FL 32459

Connie & Diana Johnson

Ron Freisen

Justin Woodard
17005 Emerald Coast Pkwy
Destin, FL 32541

Nick
Bo Allen
SunTrust Bank
Memphis, TN

Jeff Tucker

Roxy Netterville

**(F)   A concise statement of the facts which are admitted and will require no proof at trial, together with any reservations directed to such admissions.**

1.   LaGrange is an Alabama LLC having its principal place of business in North Alabama.

2.   AMC is an Alabama LLC having its principal place of business in Birmingham, Alabama.  AMC is a member of LaGrange and owns and/or holds a

100% interest in LaGrange.   James Massey ("Massey") is a principal and Manager of AMC.

3.     BRP is a Florida Limited Liability Company.   Roebuck is the Manager of BRP and is the sole equitable owner (individually or through sole ownership of Waterview Development, LLC) of said LLC.  At the time this action was filed, BRP claimed to own a membership interest in LaGrange.   BRP's ownership interest in LaGrange was foreclosed through judicial process in a suit litigated in Jefferson County, Alabama styled: *I. Drayton Pruitt Jr., and Pruitt & Pruitt, P.A. vs. Asset Management Company, LLC, BR Properties, LLC, Waterview Development, LLC, and Julian Roebuck*, Civil Action No. CV-200701680.   A copy of the Court's Final Order foreclosing the membership interest of BRP in LaGrange will be introduced into evidence as **Exhibit 1**.

4.     Roebuck is a resident of the State of Florida and resides within the territory of this court, to wit, the Northern District of Florida.   Roebuck acted in capacity as a Manager of LaGrange at all times relevant hereto.

### *The Project and the Original Acquisition of Marina Parcel*

5.     Beginning in 2004 Defendants, for themselves and through the aforementioned promoters, put together a plan to develop a large residential subdivision and commercial marina located on several parcels of raw land fronting on LaGrange Bayou in Freeport Florida (hereafter the "Project").

6.     Defendants put under contract approximately 76 acres of land for the construction of residential lots and/or homes and a separate adjoining parcel (from a different seller) of roughly 3 acres located directly on Lagrange Bayou

A0360791                                          9

providing all of the Project's waterfront access and marina amenity (the "Marina Parcel"). These two parcels represented the primary components of the Project. A depiction of the Project for the Court's convenience will be introduced as **Exhibit 2**.

7.     While Defendants possessed the requisite financial capacity to put the various parcels under contract, they did not have the financial wherewithal to fully implement the development. As such, Defendants began looking for a party to "flip" the development to, or a financial partner in the deal.

8.     BD, LLC was always looking for investment money to develop the Project and, in fact, was working with many potential investors including but not limited to: DR Horton, Meridian Group, Don Behouth, Stewart Fuzzell and several others in the Destin area.

9.     The contract to acquire the Marina Parcel was in the name of "Broadhead Development, LLC" as Purchaser and Diana Johnson as Seller. The purchase price was $2,465,000.00. While the final closing date was eventually established as April 5, 2005, the closing date was extended several times in exchange for different cash payments to the Seller. In his response to interrogatories, Roebuck lists the following payments as "J. Roebuck expenses" in connection with the acquisition of the Marina Parcel:

| Date | Payee | Amount | Purpose | Payor |
|------|-------|--------|---------|-------|
| 9/30/04 | Cadenhead Escrow | $25,000 | Marina Option | BD, LLC |
| 9/30/04 | Diana Johnson | $5,000 | Marina Option | BD, LLC |
| 10/27/04 | Diana Johnson | $15,000 | Marina Option | BD, LLC |

| 11/2/04 | Cadenhead Escrow | $50,000 | LaGrange Option | BD, LLC |
|---------|------------------|---------|-----------------|---------|
| 3/2/05  | Diana Johnson    | $50,000 | Marina Option   | BD, LLC |
| 3/11/05 | Diana Johnson    | $75,000 | Marina Option   | Roebuck |
| 3/28/05 | Diana Johnson    | $45,000 | Marina Option   | BD, LLC |
| 4/4/05  | Diana Johnson    | $20,000 | Marina Option   | BD; LLC |
| TOTAL   |                  | $285,000 |                |         |

*See Defendant Roebuck's response to Plaintiff's Interrogatories* **Exhibit 3** *and copies of the above referenced checks attached as* **Composite Exhibit 4.**

10.    In early April 2005 Defendants did not have sufficient funds to close the Marina Parcel and had not found a financial party willing to invest in the Project.   Based on the amount of money Defendants had tied up in the Project and the belief that the Marina Parcel provided a special benefit to the Project at large, Defendants were anxious to find a funding source to close the transaction.

11.    In an effort to obtain money to close the transaction, on April 4, 2005, Defendants faxed a one page document to Garland Michael Sigman and Buddy Fuzzell (Future principals of Freeport Holdings, LLC and hereafter referred to as Freeport Holdings, LLC) requesting a "Bridge Loan" of $2,500,000.00.   The facsimile was sent from the Cadenhead Law Firm.  A copy of this fax was produced at the Deposition of Sigman, an employee of Freeport Holdings, LLC, and is Bates Stamped SIGMAN 000013. A copy of the fax will be introduced at trial as **Exhibit 5**.

12.    In exchange for the alleged bridge loan, Defendants proposed to repay   Freeport   Holdings,   LLC   $2,500,000.00,   plus   a   25%   return   of

$625,000,within 60 days.   This represents an annual rate of return equal to 150%.   Upon information and belief, Freeport Holdings countered the proposal with a demand for a return of 15% per month, or 180%.   Either figure represents interest in excess of the maximum rate allowed by law in Florida, and thus, represented a usurious transaction under § 687.02, Florida Statutes (2007).

13.   On April 5, 2005, Defendant Roebuck met with Paul Broadhead, Mike Sigman, Buddy Fuzzell, and attorney Chris Boswell to discuss a "draft agreement" and closing instructions.   A time record from the Cadenhead Law Firm evidencing this meeting will be introduced as **Exhibit 6**.   On that same date, Freeport Holdings, LLC was formed for the express purpose of funding the acquisition of the Marina Parcel and it did in fact fund said acquisition by transferring the requisite sums to the title agent responsible for closing the transaction.   True and correct copies of the checks representing the loan proceeds will be introduced as **Composite Exhibit 7**.   These checks total $2,197,657.00 and represent all of the money provided to the Title Company in connection with the transaction.   The balance of the purchase price and closing expenses was to come from the $285,000.00, in deposits which had previously been tendered to the seller or escrow agent.

14.   Defendants closed the transaction with Diana Johnson on April 5, 2005 in the name of Broadhead Development, LLC.   In exchange for the contract price of $2,465,000.00, Johnson executed and delivered a Warranty Deed to Broadhead Development, LLC.   Said Warranty Deed was recorded in the Official Records of Okaloosa County Florida at O.R. Book 2663 Page 66, a copy of

which will be introduced as **Exhibit 8** a copy of the HUD-1 Closing Statement will be introduced as **Exhibit 9**.

15.    In connection with the parties Agreement, on April 5, 2005, Roebuck, as an authorized representative of Broadhead Development, LLC, executed a document styled "Assignment" purportedly conveying all of Broadhead Development, LLC's "rights, title and interest in and to" the Marina Parcel to Freeport Holdings, LLC.   A copy of said document will be introduced as **Exhibit 10**.

16.    On April 6, 2005, Broadhead Development, LLC executed and delivered a Quitclaim Deed in favor of Freeport Holdings, LLC.  The quitclaim deed was recorded in the Public Records of Okaloosa County, Florida at O.R. Book 2663 Page 3418, a copy of which will be introduced as **Exhibit 11**.

17.    Minimum Florida State Documentary Stamps of $0.70 were paid on **Exhibit 11** evidencing no consideration for the transfer.

18.    At the time Freeport Holdings, LLC provided $2,197,657.98 for the transaction, there was no written agreement between the parties. In his deposition, Michael Sigman was asked about the absence of a written agreement and responded as follows:

> Well, ..., I think what happened, that was such a rush deal.  They were about to lose it if they didn't close, and [Freeport Holdings, LLC] agreed, all this documents back and forth -- I'm not sure we had a final written agreement until – hell, maybe this document here [dated June 29, 2005]. ***But we were comfortable enough with the collateral . . . . And, you know, we weren't worried about our collateral position at the time.*** [emphasis added]

*Deposition of Garland Michael Sigman, November 1, 2007, Page 28, Lines 4-16.* Said deposition to be read into the record and introduced as **Exhibit 12**.

19.    Following delivery of the **Exhibits 8 and 11**, Defendants and Freeport Holdings, LLC exchanged draft agreements relating to a return conveyance of the Marina Property in exchange for re-payment of the $2,465,000, plus an additional sum representing a substantial return to Freeport Holdings, LLC.  Copies of these draft agreements will be introduced as **Exhibits 13, 14 and 15.**

20.    On or about June 29, 2005, the Parties allegedly executed a written agreement for Broadhead Development, LLC to re-purchase the Marina Parcel from Freeport Holdings, LLC for $4,000,000.00, on or before August 5, 2005, 122 days after funding the initial purchase price.  This price represented a direct return to Freeport Holdings, LLC on its initial $2,197,657.98 loan of 182%.  Annualized, the return equates to 245% per annum.  A copy of this Agreement dated June 29, 2005 will be introduced as **Exhibit 16.**

21.    In connection with **Exhibit 16**, Roebuck personally paid an additional $100,000.00 earnest money deposit to Freeport Holdings, LLC.  A copy of the earnest money check will be introduced as **Exhibit 17**.  Thereafter, the $100,000.00 earnest money deposit was released to Freeport Holdings, LLC.  A document styled Agreement to Release Escrowed Funds was executed by Roebuck as Managing Member of Broadhead Development, LLC on July 13, 2005.  A copy of said document will be introduced as **Exhibit 18.**

### *Formation of LaGrange Bayou Village, LLC*

22.    Following the transaction with Freeport Holdings, LLC, Defendants continued to look for investment partners or purchasers for the Project.  In the summer of 2005 Defendants believed they had located a purchaser for the Marina Parcel and expected to realize a profit on the sale of that property.  In connection with the residential subdivision, Defendants began negotiating with James Massey and Asset Management Company, LLC to develop the residential portion of the Project as a joint venture.

23.    Eventually, the parties came to terms and a series of documents were executed to memorialize the terms of a business relationship to develop the residential portion of the Project through an LLC to be called LaGrange Bayou Village, LLC.  ("LaGrange").  LaGrange had two equity members, to wit, Asset Management Company, LLC- 51% and BR Properties, LLC-49%.  The profits were designated to be split 50%-50% between the members.

24.    BR Properties, LLC, became the vehicle under which all of the promotional activities for the Project undertaken by Broadhead, Roebuck, BD, LLC, Waterview Development, LLC, and Roebuck Development, LLC, were consolidated.[1]

25.    LaGrange executed its Articles of Organization on July 19, 2005, and filed the same in the Probate Records of Sumter County Alabama on July

---

[1] Asset Management Company, LLC, has sued BR Properties, LLC, in the Circuit Court in Jefferson County, Alabama seeking a declaratory judgment disregarding the corporate form of BR Properties, LLC and recognizing Roebuck as its alter ego.  That action is styled: *In the Circuit Court of Jefferson County, Alabama, Asset Management Company vs. BR Properties, LLC, Julian Roebuck, Chris Cadenhead, and Mitchell Creek, LLC*, Case No. CV-2008-90023500. A copy of the Complaint and Motion For Summary Judgment scheduled to be heard August 21, 2008 are marked for introduction as **Exhibits 32 & 33**.  Plaintiff requests the Court take judicial notice of these pleadings as the outcome of this matter may impact these proceedings.

20, 2005.   A true and correct copy of said Articles of Organization will be introduced as **Exhibit 19.**

26.    LaGrange was formed for the express purpose of acquiring and developing a "76 acre Bay Side Community to be known as Bayou Village on LaGrange Bayou," **Exhibit 19**, Article III, (hereafter referred to as the "Project"). The Project is commonly known as "Marina Village" and located in Freeport, Walton County, Florida proximate to Highway 331 and LaGrange Bayou.   The Project was originally conceived as a two phase residential lot/housing development with two Phases totaling over 100 lots.   A conceptual depiction of the Project will be introduced as **Exhibit 2** as a visual aid to the Court and Parties.

27.    On or about July 15, 2005, LaGrange acquired the afore-mentioned 76 acre parcel and began development.

28.    In connection with the Project, on or about July 19, 2005, AMC and BRP executed the following documents:

- *Operating Agreement of LaGrange Bayou Village, LLC*, (hereafter the "Operating Agreement"), a copy of which will be introduced as **Exhibit 20**; and,

- *Master Agreement* which will be introduced as **Exhibit 21**; later amended by that certain Master Agreement dated August (no day), 2005, which will be introduced as **Exhibit 22** and,

*- Articles of Capitalization and Management of LaGrange Bayou Village, LLC,* (hereafter the "Articles of Capitalization") which will be introduced as **Exhibit 23**.

29.    Pursuant to the foregoing documents, Massey and Roebuck were named the initial two Managers of LaGrange and each agreed to "diligently employ [himself] in the business of the L.L.C. and be faithful to the members in all transactions relating to the L.L.C." See **Exhibit 23**, paragraph 7.

30.    Under the terms of the Master Agreement AMC was "essentially a passive investor, with its sole obligation being to provide the funds required to purchase the land for the development." **Exhibit 1**; Paragraph 16.

31.    To establish entitlement to its membership interest in LaGrange, BRP and Roebuck represented that they had contributed approximately $825,000.00 in "pre-paid development costs" See **Exhibit 22,** Page 4, Paragraph 7.  The Master Agreement required BRP to provide "proof of payment" of these expenses to the corporation. **Id**.

32.    Roebuck's response to Plaintiff's interrogatories seeking to identify said "prepaid development costs" listed expenses totaling $881,594.27; which expenses **included** the $285,000.00 in earnest money paid to Diana Johnson in connection with the original marina purchase as well as the $100,000.00 earnest money deposit paid to Freeport Holdings, LLC.  Without the addition of these moneys Defendants could only allege their capital contribution of prepaid development expenses was approximately $496,549.27.  Failure to establish at

least $8,254.00 put Defendants at risk of dilution and/or forfeiture of their interest in LaGrange.

33.    The $825,000 predevelopment number written in the Master Agreement was offered by BRP as an estimate of the money it, along with BD, LLC had invested the in project over the prior year before Massey's involvement.

34.    In order to satisfy their obligation under the Master Agreement, it was incumbent upon Defendants to find a way to arguably include the $385,000.00 expended in relation to the Marina Parcel.  In order to do so, Defendants sought to include the Marina Parcel in the Project envisioned by LaGrange.

### *The Second Acquisition of the Marina Parcel*

35.    On or about August 9, 2005, Roebuck approached Massey, AMC, and LaGrange with an opportunity to purchase a waterfront parcel of real property located immediately between the Project and Lagrange Bayou. The adjacent property was represented as fully permitted and suitable for the construction of a waterfront marina (hereafter the "Marina Property") which would serve as an amenity to the Project.

36.    Roebuck represented to Massey, AMC, and LaGrange that the option on the Marina Property would expire in three (3) days if not exercised at the option price of $3,900,000.00; approximately $100,000 less than the June 29, 2005 contract **Exhibit 16**.

37.    In connection with the transaction Roebuck presented Massey, AMC, and LaGrange with what purported to be an Option Agreement dated June

29, 2005.  Roebuck presented the Option Agreement under the pretense that said document was an arms length agreement between Broadhead Development, LLC (as promoter for BR Properties, LLC) and Freeport Holdings, LLC.  A partial copy of said Option Agreement, representing the only copy of said document in the possession of Plaintiffs at the time, will be introduced as **Exhibit 24**.  **Exhibit 24** is inconsistent with **Exhibits 13, 14, 15 and 16**.

38.     Based on Roebuck's representations Massey, AMC, and LaGrange consented to the exercise of the option on the Marina Property by LaGrange. Thereafter, on or about August 12, 2005, LaGrange purchased the Marina Property from Freeport Holdings, LLC, for $3,800,000.00, plus closing costs associated therewith of $40,578.50.  A true and correct copy of the Warranty Deed evidencing conveyance and HUD-1 closing statement of the transaction are marked for introduction as **Exhibits 25 & 26,** respectively.

39.     At closing, LaGrange was not able fund any portion of the purchase price for the Marina Property.  AMC was compelled to fund the entire purchase price, minus the earnest money deposit made by Roebuck of $100,000, and BRP funded closing costs of $40,578.50, which sum also appears as a "prepaid development cost" in Roebuck's interrogatory response.  **Exhibit 3**.

40.     LaGrange paid $3,940,578.50 for the Marina Parcel pursuant to the HUD-1.  **Exhibit 26.**  Of the $385,000 in earnest money payments identified by Roebuck in his interrogatory responses, only $100,000.00 was credited toward the purchase price of the Marina Parcel by LaGrange.   *Id.*

### *Foreclosure of BR Properties, LLC's interest in LaGrange Bayou Village LLC*

41.     On September 11, 2007, BRP's ownership interest in LaGrange was foreclosed through judicial process in a suit litigated in Jefferson County, Alabama styled: *I. Drayton Pruitt Jr., and Pruitt & Pruitt, P.A. vs. Asset Management Company, LLC, BR Properties, LLC, Waterview Development, LLC, and Julian Roebuck*, Civil Action No. CV-200701680.  A copy of the Court's Final Order foreclosing the membership interest of BRP in LaGrange is marked for introduction as **Exhibit 1**.

(G)     **A concise statement of those issues of law on which there is agreement.**

### Matters of Alabama Law:

I.      Under Alabama's Limited Liability Company Act, Managers of LLCs owe the LLC and its member's non-delegable and non-waiveable fiduciary duties of loyalty, care, as well as the duty of good-faith and fair dealing.  Harbison v. Strickland, 900 So. 2d 385, 389-391 (Ala. 2004).  Defendants owed statutory and contractual fiduciary duties to Massey, AMC, and LaGrange, including the duty of loyalty, the duty of care, and the duty of good faith and fair dealing.  Such fiduciary duty prohibits, among other things, Defendants from abusing their position for a personal advantage to the detriment of the LLC and its members.  Id.

### Matters of Florida Law:

I.      CHAPTER 697: INSTRUMENTS DEEMEND MORTGAGES AND THE NATURE OF A MORTGAGE:

s. 697.01 Instruments deemed mortgages.—

(1) All conveyances, obligations conditioned or defeasible, bills of sale or other instruments of writing conveying or selling property, either real or personal, for the purpose or with the intention of securing the payment of money, whether such instrument be from the debtor to the creditor or from the debtor to some third person in trust for the creditor, shall be deemed and held mortgages, and shall be subject to the same regulations, restraints and forms as are prescribed in relation to mortgages.

II.     CHAPTER 687: INTEREST AND USURY; LENDING PRACTICES:

s. 687.02 "Usurious Contracts" defined.—
(1) All contracts for the payment of interest upon any loan, advance of money, line of credit, or forbearance to enforce the collection of any debt, or upon any obligation whatever, at a higher rate of interest than the equivalent of 18 percent per annum simple interest are hereby declared usurious.  However, if said loan, advance of money, line of credit, forbearance to enforce the collection of a debt, or obligation exceeds $500,000 in amount or value, then no contract to pay interest thereon is usurious unless the tare of interest exceeds the rate prescribed in s. 687.071. (Declaring criminal usury for interest charges in excess of 25% per annum simple interest).

Further, under Florida law if a debt of obligation is found to be criminally usurious, the creditor may not enforce any portion of the principal or interest of the obligation in a court of law.  s. 687.071 *Florida Statutes* (2007) and Florida Cases citing this premise.

III.     Under Florida law, in order for Plaintiffs to be entitled to recover damages against Defendants for actionable fraud (Count I) they must establish that Defendants knowingly made false statements regarding material facts which Plaintiffs relied upon to their detriment.  <u>Lance v. Ward</u>, 457 So. 2d 1008 (Fla. 1984) and other cases citing this premise.

IV.     The Florida Supreme Court defined "constructive fraud" as follows:

Constructive fraud is simply a term applied to a great variety of

transactions . . . which equity regards as wrongful, to which it attributes the same of similar effects as those which follow from actual fraud, an for which it gives the same of similar relief as that granted in cases of real fraud, . . .

Douglas v. Ogle, 85 So. 243, 244 (Fla. 1920).   Florida's First District Court of Appeal has held that "constructive fraud may exist independently of intent to defraud." Harrell v. Branson, 344 So. 2d 604, 606 (Fla. 1st DCA 1977) and that in an offending transaction constructive fraud is "deemed to exist where a duty under a confidential or fiduciary relationship has been abused" Id. at 607 and other cases citing this premise.

V.    Fraudulent Concealment results from a fiduciary's failure to disclose material information which he has a duty to disclose.    First Union National Bank v. Turney, 824 So.2d 172, 190-191 (Fla. 1st DCA 2001) and other cases citing this premise.


**(H)    A concise statement of issues of fact which remain to be litigated.**


For Plaintiff:

i.            In connection with contracting, permitting, conceiving and developing the project which is the subject of this action, Roebuck acted in a partnership with Paul Broadhead, Jr.  Roebuck and Broadhead jointly promoted and invested in said project as promoters using their individual names and several different corporate and/or fictitious names, including:  BR Properties, LLC, Broadhead Development, LLC ("BD, LLC"), Roebuck Properties, LLC, Waterview Development, LLC.  Nevertheless, at all times Roebuck was acting as

a principal in the development of the subject project.  Hereafter Roebuck, BR Properties, LLC, and the names utilized in promoting this venture will be collectively referred to as Defendants.  Defendant denies these allegations.

ii.     Plaintiffs allege that the transaction between Defendants and Freeport Holdings, LLC, in connection with the original acquisition of the Marina Parcel was intended to be a financing transaction and, as structured, was an illegal financing transaction.  Defendants deny these allegations.

iii.    Plaintiffs allege that Defendants failed to disclose and/or actively concealed the original transaction from Plaintiffs in an effort to coerce Plaintiff into purchasing the Marina Parcel.  Defendants deny this allegation.

iv.    Plaintiffs allege that Defendants' motive for their alleged conduct was the necessity that the Marina Parcel be included in the Project such that Defendants could claim that the $285,000.00 in previous earnest money deposits were part of their capital contributions to LaGrange which justified their equity and profit interest in LaGrange.  Defendants deny these allegations.

v.     Plaintiffs allege that Defendants had a fiduciary duty to disclose to Massey, AMC, and LaGrange any material information relating to the business of LaGrange which was readily known and apparent to Roebuck, yet unknown to Massey, AMC and LaGrange, i.e., the details of the arrangement with Freeport Holdings, LLC, and that these concealments constituted intentional omissions made by Roebuck for his own personal benefit or for the benefit of BRP to the exclusion of AMC.  Defendants deny these allegations.

vi.    Plaintiffs alleged that the misrepresentations and concealments made constituted acts taken by Roebuck for his own personal benefit or for the benefit of BRP to the exclusion of AMC. Defendants deny these allegations.

vii.    Plaintiffs allege that in connection with LaGrange's acquisition of the Marina Property, Defendants made intentional misrepresentations to Massey, AMC, and LaGrange, which acts constitute a breach of Roebuck's fiduciary duties of loyalty, care, good faith and fair dealing. Defendants deny these allegations.

vii.    Plaintiffs allege that in connection with LaGrange's purchase of the Marina Property, Roebuck deliberately concealed material facts relative to the transaction, which concealment constituted a breach of Roebuck's fiduciary duties of loyalty, care, good faith and fair dealing to AMC and LaGrange. Defendant denies these allegations.

viii.    Plaintiff alleges that Roebuck undertook these acts for his own personal benefit or for the benefit of BRP to the exclusion of AMC.

ix.    Whether Plaintiff has sustained damages as a result of the alleged acts, actions, and inactions of Defendants.

x.    Based on the limited amount of time to exercise the alleged option Agreement with Freeport Holdings, LLC, Roebuck represented to Massey, AMC, and LaGrange the transaction would have to be closed with cash. Nevertheless, Roebuck represented that immediately thereafter a local financial institution was committed to financing the project at a 90% loan to value ratio.

Defendant denies these allegations.

For Defendant:

        i.      There was no bridge loan. Freeport Holdings, LLC purchased the marina parcel and took title. Fuzzell was entertaining developing and or selling the marina purchase to make a profit. Plaintiff contests these allegations.

        ii.      In relation to the $825,000 predevelopment number written in the Master Agreement was offered by BR Properties as an estimate of the money it, along with BD had invested the in project over the prior year before Massey's involvement. There was never a discussion of need to provide the exact amount of $825,000. In fact, there was more than that invested along the way. Massey was provided the opportunity to get in the project by taking down the remaining land acquisition costs to be included in the project for a 50% stake. It turned into a 51%/49% split. Plaintiff contests these allegations.

        iii.      BD, LLC had an option to purchase the Marina Parcel back from Freeport Holdings, LLC at a later date. In fact, BD, LLC didn't purchase the Marina Parcel back in time under the terms of the option agreement. The purchase price was later raised by Freeport Holdings, LLC. There was no loan. Plaintiffs contest these allegations.

        iv.      The scope of the original development project was expanded to include the Marina Parcel just 3 weeks following the formation of Lagrange Bayou Village, LLC (Asset Management Company, LLC and BR Properties, LLC). In fact, Massey was wanting to acquire even more property and increase

the scope even more.  Plaintiff contests these allegations.

(I)     At present, the parties are not aware of any issues of law which require determination.

(J)     At present, there is no disagreement as to the application of rules of evidence or the Federal Rules of Civil Procedure.

(K)     At this time, there are no outstanding motions or other matters which require any action by the Court prior to the trial of this matter.

(L)     By stipulation of the parties, this action is presently a non-jury trial.

(M)     The parties mediated this matter to an impasse on two occasions, February 27, 2008 and September 24, 2007.  The parties continue to discuss potential settlement of this action; however, as of the date of this report, no accommodation has been reached.

(N)     Counsel estimates the length of time necessary to complete the trial will not exceed three (3) days.

WHEREFORE, the parties respectfully request the Court continue to maintain this matter on its non-jury trial docket for resolution, and grant the parties any such other and further relief as it deems just and proper.

Dated this 10th day of July, 2008.

Respectfully submitted,

**/s/ Chris Cadenhead**
**CHRIS CADENHEAD, ESQ.**
Fla. Bar No. 0368547
Cadenhead Law Firm
543 Harbor Boulevard, Suite 501
Destin, FL  32541
Tel:    850-837-5509
Fax:    850-837-5505
Email:  chris@cadenheadlawfirm.com

**/s/ Scott A. Remington**
**SCOTT A. REMINGTON, ESQ.**
Fla. Bar No. 122483
Clark, Partington, Hart, Larry,
   Bond & Stackhouse
P. O. Box 13010
Pensacola, FL  32591-3010
Tel:  850-434-9200
Fax: 850-432-7340
Email:  sremington@cphlaw.com